**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**GWEN SURRATT**                                  **CIVIL ACTION**

**VERSUS**                                        **CASE NO. 11-2943**

**UNUM LIFE INSURANCE COMPANY OF**                **SECTION: "G"(3)**
**AMERICA**

**ORDER AND REASONS**

Before the Court is Plaintiff Gwen Surratt's ("Surratt")  Motion for Judgment as a Matter of Law,[1] wherein she seeks an increased award of disability payments from Defendant Unum Life Insurance Company of America ("Unum") and recovery of attorney's fees, costs, and prejudgment interest. Having considered the parties' filings, the administrative record, and the applicable law, for the reasons discussed below, the Court will grant Surratt's motion in part and deny it in part without prejudice to allow for further briefing.

**I. Background**

*A. Procedural Background*

Unum approved Surratt's claim for long-term disability benefits pursuant to a plan provided by Surratt's employer on June 2, 2011, with an effective eligibility period to begin on June 7, 2011.[2] Surratt filed a formal appeal to Unum on June 24, 2011, contesting the amount of the benefit that Unum determined Surratt would receive .[3] Unum denied the appeal on August 9, 2011.[4] Surratt again

---

[1] Rec. Doc. 18.

[2] Rec. Doc. 21 (hereinafter "Administrative Record" or "AR") at p. 266. Pursuant to an order of this Court, the Administrative Record was filed under seal. *See* Rec. Doc. 20.

[3] *Id.* at p. 315.

[4] *Id.* at pp. 346-49.

appealed to Unum on the grounds that it had miscalculated her benefits.[5] Unum denied this appeal on October 31, 2011, and advised her of her right to file a lawsuit.[6]

Surratt timely filed suit in this Court on November 29, 2011, alleging that Unum's conduct violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*[7] On October 30, 2012, the Court ordered the parties to file cross motions for final judgment based upon the administrative record.[8] Surratt filed a motion for judgment as a matter of law on February 21, 2013.[9] Unum responded in opposition on March 18, 2013,[10] and Surratt filed a reply on March 28, 2013.[11]

## B. Factual Background

Surratt began working for Humana, Inc., ("Humana") on September 12, 2005.[12] She worked as a sales representative primarily responsible for selling Humana health insurance policies, but her health began to deteriorate after a 2006 diagnosis of lupus.[13] By November 15, 2010, her doctor noted that Surratt had failed to respond to the medications she had been prescribed and that "at the present time, she is unable to continue with gainful employment due to her persistent and vexing

---

[5] *Id.* at 381-83.

[6] *Id.* at 674-76.

[7] Rec. Doc. 1.

[8] Rec. Doc. 12.

[9] Rec. Doc. 18.

[10] Rec. Doc. 27.

[11] Rec. Doc. 35.

[12] AR at p. 5.

[13] Rec. Doc. 18-1 at p. 2;  AR at p. 120.

symptoms."[14] Surratt left her job effective December 7, 2010,[15] and soon thereafter applied for and received short-term disability benefits under a plan Humana had provided.[16] These benefits expired on June 6, 2011.[17] Prior to the expiration of these benefits, Surratt applied to Unum for coverage under the long-term disability plan. It is undisputed that Unum served as the plan's insurer, and that the long-term disability plan granted Unum "discretionary authority to make benefit determinations" under the plan's terms.[18]

## II. Parties' Arguments

A.   *Surratt's Arguments in Support*

1.   *A Plain Reading of the Policy Includes Surratt's "Perpetuity Payments" as "Monthly Earnings."*

Surratt first argues that she is entitled to judgment as a matter of law because Unum's benefits determination clearly contradicts the plain language of the long-term disability benefits policy. As Surratt notes, and as Unum does not dispute, the long-term disability benefits plan calculated her monthly benefit as "66.6667%" of her "monthly earnings," less any "deductible sources of income."[19] The policy twice defines the term "monthly earnings." First, the policy states, under the Benefit Information section:

---

[14] AR at p. 65.

[15] *Id.* at p. 5.

[16] Rec. Doc. 18-1 at p. 2.

[17] AR at p. 20.

[18] *Id.* at pp. 157, 162.

[19] AR at pp. 138-39.

**Sales Employees**
'Monthly Earnings' means your total income in effect just prior to your date of disability. It is before taxes and any deductions made for pre-tax contributions to a qualified deferred compensation plan, Section 125 plan, or flexible spending account. It includes your gross targeted sales incentive, divided by 12. It does not include income received from commissions, bonuses, overtime pay, shift differential, and any other extra compensation or income received from sources other than your Employer.[20]

Next, the policy's Glossary provides that

**MONTHLY EARNINGS** means your gross monthly income from your Employer as defined in the plan.[21]

Surratt argues that Unum incorrectly calculated her long-term benefits by including only her hourly wage and "targeted sales incentive" as her "monthly earnings" and by leaving out her "perpetuity payments."[22] As her counsel explained to Unum, the "perpetuity payments" Surratt received were monthly payments reflecting $5 for each customer to whom Surratt had sold a Humana insurance policy who remained Humana customers.[23] In all, these perpetuity payments amounted to more than two-thirds of Surratt's earnings, and Surratt argues that these payments thus were part of her total monthly income. While Unum told her that the "perpetuity payments" constituted "other extra compensation" and therefore not part of her "monthly earnings," Surratt argues that a plain reading of the policy compels a different result because the exclusion of "extra compensation" refers only to "extra compensation" from non-employers and because her "perpetuity payments" fall under the definition of "monthly income."[24]

---

[20] *Id.* at p. 139.

[21] *Id.* p. 153.

[22] Rec. Doc. 18-1 at pp. 7-8.

[23] AR at p. 382.

[24] Rec. Doc. 18-1 at p. 8.

Surratt notes that a court must interpret ERISA plan language "in [its] ordinary and popular sense as would a reasonable person of average intelligence and experience."[25] She contends that, when viewing the policy terms in this light, the perpetuity payments are not excluded from the definition of "monthly earnings," and therefore should be encompassed in her total benefits calculation.[26]

Moreover, because the definition of the term "monthly earnings" begins with a participant's "total monthly income," Surratt contends that her perpetuity payments also clearly should have been included in the calculation formula used to determine her benefits. Surratt avers that Unum knew what the plain language of the policy meant, but nonetheless incorrectly denied her benefits. As evidence, Surratt attacks Unum's letters of denial issued to Surratt, claiming that they misquote the actual policy language and manipulate the grammar and language to fit with Unum's interpretation.[27]

### 2.      Sources Outside the Policy Support Surratt's Interpretation

Surratt also supports her interpretation of the policy by alleging several facts outside the language of policy itself. First, she notes that because the perpetuity payments constituted more than two-thirds of her regular monthly income, they must be part of her total monthly income and not considered "other extra compensation or income received from a source other than her employer[,]" which is excluded from the benefit calculation.[28]

Second, Surratt also argues that a Summary Plan Description ("SPED") provided by Humana

---

[25] *Id.* at p. 8 (citing *Crowell v. Shell Oil Co.*, 541 F.3d 295 (5th Cir. 2008)).

[26] *Id.*

[27] Rec. Doc. 18-1 at p. 13.

[28] *Id.* at p. 8.

to explain the long-term policy supports her interpretation of the policy.[29] In particular, she notes that the SPED provides a chart that lists some examples of disability benefit amounts in relation to hypothetical employees' monthly salaries.[30] She additionally highlights that the SPED explains that sales associates' "monthly base salary equals base pay plus target sales incentive."[31] Surratt contends that her perpetuity payments constituted part of her "base pay." Likewise, she argues that information on Humana's website described the long-term disability benefit as being based on her "regular monthly earnings."[32] Surratt concludes that, because she received her perpetuity payments each month, they constitute regular monthly earnings.[33]

Third, Surratt also seeks support from the asserted fact that her perpetuity payments were calculated and used in the formula that determined her short-term disability benefits.[34] She asserts that the amount she received as "roughly $8,000 per month[,]" but there is no record of such payments in the administrative record.[35] Fourth, Surratt notes that her employer had notified her that she would continue to receive her perpetuity payments while receiving short-term disability benefits.[36] She also cites an e-mail her manager sent to sales associates, alleging that it likewise establishes that perpetuity payments generally were considered by Humana and its employees, if not

---

[29] *Id.* at pp. 9-10.

[30] *Id.* at pp. 9-10.

[31] *Id.* at p. 10.

[32] *Id.* at p. 11 (citing AR at pp. 404-05).

[33] *Id.*

[34] *Id.* at p. 12.

[35] *Id.* at pp. 2, 12.

[36] *Id.* at p. 12. (citing AR at p. 401).

6

by Unum, to be "regular amounts she received each month, no matter what[.]"[37]

### 3.    Unum Misquoted the Policy Provision in Both Denial Letters.

Surratt notes that the language Unum used in its denial letters is conspicuously different from that set forth in the long-term disability benefits plan.[38] She claims that "Unum slips in a serial comma that is not present in the provision of its policy."[39] Surratt argues that this "maneuver" establishes that Unum knew Surratt's interpretation was accurate. She also concludes that the altered policy language shows that "Unum is deceptively making efforts to deny this claim, which is an abuse of discretionary authority."[40]

### 4.    The Perpetuity Payments Could not be Considered "Extra Compensation."

Surratt next argues that even if the policy does exclude "other extra compensation" that she received from Humana, her employer, her perpetuity payments do not fall under the definition of "extra compensation" and are therefore not excluded under the policy.[41] She contends that a source of income that provides more than two-thirds of an employee's earnings, such as her perpetuity payments, "could hardly be construed as 'any other extra compensation."[42]

---

[37] *Id.*

[38] *Id.* at p. 13,

[39] *Id.* (citing AR 348, 675).

[40] *Id.*

[41] *Id.* at pp. 13-14.

[42] *Id.*

**5.      Alternatively, the Policy is Ambiguous and Should be Interpreted in Surratt's Favor.**

Surratt argues in the alternative that if the policy's plain language does not clearly support her interpretation, the language is ambiguous. If so, she argues, Unum's interpretation exceeded the bounds of its authority because it abused its discretion.[43] Here, she argues that her position is supported by the doctrine of *contra proferentem*, which construes any ambiguities against the drafter of contractual language, which in this case is Unum.[44]

**6.      Unum's Inherent Conflict of Interest Should Weigh Heavily in the Abuse of Discretion Determination.**

Finally, citing the United States Supreme Court's *Metropolitan Life Insurance Company v. Glenn* (hereinafter "*MetLife*"),[45] Surratt argues that Unum's conflict of interest, in operating as both the administrator and insurer of the plan, supports finding an abuse of discretion.[46] In consideration of *MetLife*, Surratt contends that Unum's "history of denying valid claims" justifies giving the conflict of interest here considerable weight in determining whether Unum abused its discretion.[47]

For the foregoing reasons, Surratt argues that she is entitled to a recalculation of her benefits that include her "perpetuity payments" as part of her "monthly earnings." Moreover, she seeks to recover attorney's fees, costs, and prejudgment interest.

---

[43] *Id.* at pp. 14-15.

[44] *Id.*

[45] 554 U.S. 105 (2008).

[46] Rec. Doc. 18-1 at p. 16-17.

[47] *Id.*

**B. Unum's Arguments in Opposition**

    **1. Surratt's Benefits Under Her Short-Term Disability Plan are Irrelevant.**

    Unum asserts that the amount that Surratt recovered in short-term benefits is irrelevant to the long-term policy at issue in this action.[48] It claims that this is so because Unum was not involved in calculating the benefits owed under the short-term policy, but rather Humana determined that amount.[49] Unum further seeks to expand the record on this point by introducing an affidavit from a Unum official stating that Unum (1) does not calculate short-term disability benefit amounts; (2) does not know the benefit amounts paid to short-term disability plan claimants; and (3) does not issue the actual short-term disability payments.[50] Likewise, Unum asserts that, as separate policies with independent provisions, it is possible that the short-term policy allowed for additional benefits that the long-term policy did not.[51]

    **2.    Surratt's Position Regarding Her Short-Term Benefits is Inconsistent and Based Upon Statements Taken out of Context.**

    Unum accuses Surratt of inconsistently claiming that she should be receiving her perpetuity payments separately and in addition to her long-term disability benefits and that the perpetuity payments should be included as part of her benefits determination.[52] Moreover, Unum asserts that Surratt has selectively quoted from Humana's communications to her regarding her perpetuity payments and that the communications actually do not establish any connection between the

---

    [48] Rec. Doc. 27 at pp. 2-5.

    [49] *Id.* at pp. 2-3.

    [50] *Id.* at pp. 1-2.

    [51] *Id.* at pp. 4-5. The administrative record does not contain evidence detailing what Surratt received in short-term benefits.

    [52] *Id.* at p. 5.

"perpetuity payments" and sales employees' entitlements under the long-term disability policy.[53]

>        **3.    Unum's Interpretation of the Plain was Within Its Authority and Did Not
>               Constitute an Abuse of Discretion.**

Unum argues that it did not abuse its discretion in interpreting the long-term disability policy to exclude the "perpetuity payments" from the definition of "monthly earnings."[54] First, Unum asserts that it properly exercised its interpretive discretion granted under the policy, because even assuming Surratt's reading of the policy is correct, Unum's interpretation is consistent with the policy's plain meaning and thus reasonable.[55] Second, Unum argues that the administrative record lacks any evidence that its structural conflict of interest influenced its interpretation of the policy here. To this end, Unum seeks to introduce a letter that is not part of the administrative record, to establish that it has successfully enacted certain procedural safeguards pursuant to a regulatory settlement agreement with most of the states and the U.S. Department of Labor.[56]

**C. Surratt's Reply to Unum's Opposition**

In reply, Surratt responds by arguing that Unum's interpretation is not legally correct because it does not constitute a fair reading of the plain meaning of the policy's language and because her own interpretation would not subject the long-term benefits plan to substantial unanticipated costs.[57] To the first point, Surratt argues that Unum's cited cases all featured different policy language than

---

[53] *Id.* at pp. 6-7.

[54] *Id.* at pp. 8-12.

[55] *Id.* at p. 8.

[56] *Id.* at p. 11. The Court notes that a copy of the regulatory settlement agreement itself is in the record. *See* AR at pp. 384-397.

[57] Rec. Doc. 35 at pp. 2-6.

what is at issue here.[58] She then argues that the "unanticipated-costs factor" under ERISA law should not play a significant role in this analysis, under the theory that the factor is appropriate for pension plans, but not disability plans.[59] She also argues that, even if the factor does apply, it should not apply in Unum's favor in this case. Surratt asserts that there is no evidence in the record to indicate, as Unum argues, that Unum based the policy premiums only on Surratt's hourly wage and targeted sales incentives.[60] Moreover, she faults Unum for failing to explain this supposed basis for its decision until Unum's final letter of denial.[61] Surratt argues that this last-minute notice deprived her of meaningful review required by ERISA, and thus constitutes an abuse of discretion.[62]

### III. Law and Analysis

**A.    *Standard of Review***

Reviewing an ERISA plan administrator's determination of benefits generally entails a two-step inquiry. First, a court "must determine the legally correct interpretation of the plan" and whether the administrator gave the plan a legally correct reading.[63] If the administrator's interpretation was legally incorrect, the court must next ask whether the administrator's decision constituted an abuse of discretion.[64] This latter determination turns generally on the balance of three factors: "(1) the

---

[58] *Id.* at pp. 2-5.

[59] *Id.* at p. 5.

[60] *Id.* at p. 6.

[61] *Id.*

[62] *Id.*

[63] *Gosselink v. Am. Tel. & Tel., Inc.*, 272 F.3d 722, 726 (5th Cir. 2001).

[64] *Id.* This test applies only in cases, such as the one here, where the administrator has the authority to interpret the plan and participants' eligibility for benefits. *Id.*

11

internal consistency of the plan under the administrator's interpretation, (2) any relevant regulations formulated by the appropriate administrative agencies, and (3) the factual background of the determination and any inferences of lack of good faith."[65]

### B.    *Legally Correct Interpretation of the Policy*

Whether Unum's interpretation of the policy is legally correct also involves balancing several factors: "(1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan."[66] When interpreting an ERISA plan, the Court must "give its language the ordinary and generally accepted meaning."[67] Moreover, if a plan's terms remain ambiguous after applying the ordinary principles of interpretation, this Court must "apply the rule of *contra proferentem* and construe the terms strictly in favor of the insured."[68] The parties agree that the record lacks information regarding whether Unum's construction of the policy has been consistent. Thus, the Court need not address that factor.

### 1.    *Fair Reading of the Policy's Terms*

The policy here provides that Surratt's benefits would be calculated as a percentage of her "monthly earnings."[69] Thus, the Court must determine the legally correct interpretation of the term "monthly earnings" as used in the plan. Under the Benefit Information section, the policy states:

---

[65] *Id.*

[66] *Id.*

[67] *Koehler*, 683 F.3d at 187 (citation omitted).

[68] *High v. E-Systems, Inc.*, 459 F.3d 573, 578-79 (5th Cir. 2006).

[69] AR at pp. 138-39.

**Sales Employees**
'Monthly Earnings' means your total income in effect just prior to your date of disability. It is before taxes and any deductions made for pre-tax contributions to a qualified deferred compensation plan, Section 125 plan, or flexible spending account. It includes your gross targeted sales incentive, divided by 12. It does not include income received from commissions, bonuses, overtime pay, shift differential, and any other extra compensation or income received from sources other than your Employer.[70]

Additionally, the policy's Glossary provides:

**MONTHLY EARNINGS** means your gross monthly income from your Employer as defined in the plan.[71]

Unum denied Surratt's claim for increased benefits reflecting her "perpetuity payments" as part of her "monthly earnings," on the ground that the perpetuity payments constituted "other compensation," which are expressly excluded from the formula.[72]

Surratt asserts that Unum's interpretation of the policy is legally incorrect because the plain reading of the policy does not exclude her "perpetuity payments." Her reading of the policy is that if those payments are not expressly excluded by the provision because the exclusion of "other extra compensation" applies only to non-employer sources. Unum reads the language differently, effectively arguing that the provision excludes "other extra compensation" from both employer and non-employer sources. Moreover, Unum asserts that a plain reading of the policy establishes that "perpetuity payments" are never included in the definition of "monthly earnings" in the first place.

"[W]hether the administrator's interpretation is consistent with a fair reading of the plan[]" is the most important factor to consider when determining whether the interpretation was legally

---

[70] *Id.* at p. 139.

[71] *Id.* p. 153.

[72] *Id.* at pp. 347.

correct.[73] On this issue, the Court must look to "the plain meaning of the plan language" and interpret its terms in their "ordinary and popular sense as would a person of average intelligence and experience."[74]

### a.     Exclusion of "Perpetuity Payments" from "Monthly Earnings"

The policy provision features a list of excluded sources of income. When Unum drafted the policy, it inserted a serial comma into this provision before the phrase "and any other extra compensation or income from sources other than your Employer." The placement of that comma indicates that the following qualifier "from sources other than your Employer" refers both to "extra compensation" and "income." Otherwise, Unum's choice of using both of the conjunctions "and" and "or" in the sentence would make no sense. Unum suggests that the lack of a comma before "or" and before "income" is a stylistic choice of no consequence. However, Unum expressly used the serial comma in a preceding sentence, even though doing so was not necessary to avoid confusion: "['Monthly earnings'] is before taxes and any deductions made for pre-tax contributions to a qualified deferred compensation plan, Section 125 plan, or flexible spending account."[75] Thus, under Unum's reading, the drafter chose to insert the serial comma where it was not necessary, but then, just two sentences later, chose both to omit it while simultaneously choosing to confuse policy readers by using two coordinating conjunctions.

In support of its argument that this provision does expressly exclude Surratt's perpetuity payments from "monthly earnings," Unum cites to *Morrison v. Unum Life Insurance Company of*

---

[73] *Gosselink*, 272 F.3d at 727.

[74] *Crowell v. Shell Oil Co.*, 541 F.3d 295, 314 (5th Cir. 2008).

[75] AR at p. 139.

*America,* a decision from the Eastern District of Michigan regarding almost exactly the same provision that is in dispute here.[76] The relevant provision in *Morrison* defined the term "annual earnings" not to include "income received from commissions, bonuses, overtime pay, any other extra compensation or income received from sources other than your employer."[77] The district court rejected the plaintiff's theory that the provision's lack of a serial comma before the "or" meant that "sources other than your employer" modified both "extra compensation" and "income."[78]

The *Morrison* court noted that Unum's reading of *that* sentence "represents a natural and sensible interpretation."[79] The provision in *Morrison*, however, is materially different than the one at issue here. Unum's policy in *Morrison* did not contain the "and" that is included here before the phrase "any other extra compensation." Thus, *Morrison*, which is nevertheless not binding on this court, actually supports Surratt's reading of her policy. The same distinction applies for *Bullock v. USF Group Benefits Plan*[80] and *Gingold v. Unum Life Insurance Company of America*,[81] the other cases Unum cites in support of its strained reading of the policy in this case.

Unum's cited cases establish that it has applied different grammatical tools and word choices

---

[76] Rec. Doc. 27 at p. 9 (citing *Morrison v. Unum Life Ins. Co. of Am.*, 730 F.Supp. 2d 699 (E.D. Mich. 2010)).

[77] *Morrison*, 730 F.Supp. 2d at 707.

[78] *Id.* at 709.

[79] *See id.*

[80] No. 06-0182, 2008 WL 2965724, at *1 (E.D. Tenn. July 30, 2008) (construing policy provision excluding " . . . overtime pay, any other extra compensation, or income received from sources other than your Employer.").

[81] *Gingold v. Unum Life Ins. Co. of Am.*, 74 F. App'x. 660, 661 (7th Cir. 2003).

to different policies to achieve different results.[82] In particular, the cases support the proposition that Unum has written policies in a manner that unambiguously excludes from the definition of "monthly earnings" any "extra compensation" provided by the beneficiary's employer. Here, Unum chose not to draft Surratt's policy in a similar manner. Instead, Unum drafted a provision wholly different than the ones at issue in *Morrison*, *Bullock*, and *Gingold*. Therefore, Unum expressly provided that the "extra compensation" provision in this case excluded such compensation deriving only from non-employers. Because Surratt's perpetuity payments came from Humana, her employer, they are not excluded from the definition of "monthly earnings."

### b.      Inclusion of "Perpetuity Payments" as "Monthly Earnings"

Even though the policy does not exclude "perpetuity payments" from the definition of "monthly earnings," the Court must still determine whether the legally correct interpretation of the policy includes them within the definition. The policy defines the term "monthly earnings" as including employees' "total income" or "gross monthly income."[83] Thus, the question of whether "perpetuity payments" are part of Surratt's "monthly earnings" turns largely on the meaning of "income." The policy does not define "income." The Court therefore will accept and apply the common understanding of this term employed by the Fifth Circuit in another ERISA case: a "gain or recurrent benefit usually measured in money."[84] As applied to Surratt's policy, therefore, this broad definition of "income" must include all recurrent payments Surratt received that are not

---

[82] The Court also notes Unum's construction of the similar provision at issue in a 2006 case before the Eighth Circuit. *See Riddell v. Unum Life Ins. Co. of Am.*, 457 F.3d 861, 862 (8th Cir. 2006) (" . . . differential, any other extra compensation, or income received from sources other than your Employer.").

[83] AR at pp. 139, 153.

[84] *See Musmeci v. Schwegmann Giant Super Markets*, 332 F.3d 339, 345 (5th Cir. 2003) (citing *Lukhard v. Reed*, 481 U.S. 368, 374 (1987) (citing Webster's Third International Dictionary 1143 (1976)).

otherwise expressly excluded by the policy. Moreover, even if the term "income" is ambiguous, the ambiguity must be construed against Unum's interpretation because Unum drafted the policy.[85] Because it is not disputed that Surratt received her "perpetuity payments" on a recurring basis,[86] they constitute "income" as defined by the policy's plain language. As such, and as discussed above, the payments are not expressly excluded, the only legally correct interpretation of the policy requires that the payments must be included in the benefits calculation.

Unum's reliance on *Keszenheimer v. Reliance Standard Life Insurance* to assert that the "perpetuity payments" here are presumptively excluded by the policy is unavailing. In *Keszenheimer*, the Fifth Circuit construed a policy that defined "Covered Monthly Earnings" in order to determine whether the claimant was entitled to have his benefits take into account the claimant's per diem payments and car allowance.[87] The policy defined "Covered Monthly Earnings" as "the Insured's monthly *salary* . . . on the day just before the date of Total Disability."[88] The policy specifically excluded "overtime pay, bonuses or any other special compensation" from the definition of "Covered Monthly Earnings," and it specifically included "commissions."[89]

Surratt's policy does not use the term "salary" as the starting point to determine "monthly earnings." It uses the far broader term "income." Accordingly, the plain reading of the policy indicates that the plan presumptively included "perpetuity payments" into the definition of "monthly

---

[85] *See High*, 459 F.3d at 578-79 ("Only when the plan terms remain ambiguous after applying ordinary principles of contract interpretation does this court apply the rule of *contra proferentem* and construe the terms strictly in favor of the insured.").

[86] Specifically, Surratt received these payments every month.

[87] 402 F.3d 504, 506 (5th Cir. 2005).

[88] *Id.* (emphasis added).

[89] *Id.*

earnings." Because the plain reading of the policy also clearly establishes that the perpetuity payments were not excluded, Unum's interpretation of the policy was not consistent with a fair reading. Therefore, this "most important" factor in the correctness of Unum's interpretation weighs in Surratt's favor.

### 2.      *Unanticipated Costs of Competing Interpretations*

Here, the Court must determine "whether either of the interpretations would give rise to substantial unanticipated costs" to the plan.[90] "If a given interpretation would result in such costs, that interpretation is less likely to be legally correct."[91] This issue requires "an inquiry into the plain reading of the plan language and whether a proposed alternate reading would result in costs unanticipated under the plain meaning."[92] In other words, the most relevant inquiry into this factor "is not whether [Unum] subjectively anticipated costs but whether they should have objectively anticipated costs" that would arise from the policy's plain language.[93]

The policy's plain language indicates that sales employees' perpetuity payments, because they fall under the broad definition of the word "income," are included in the term "monthly earnings." It also indicates that the perpetuity payments are not expressly excluded by any other provision. Thus, the most relevant inquiry on this factor weighs in Surratt's favor because Unum objectively should have anticipated that result.

---

[90] *Crowell*, 541 F.3d at 316.

[91] *Id.*

[92] *Id.*

[93] *Id.* at 317.

Unum cites *Marshall v. Hartford Life & Accident Insurance Company*, from another section of this court, for the proposition that the reading Surratt prefers would lead to unanticipated costs because "Unum explained that Humana . . . did not collect premiums to include 'perpetuity payments' within that definition."[94] In *Marshall*, there was evidence in the record indicating how the policy premiums were calculated.[95] In particular, the premiums in that case were calculated "based on the employee's monthly earnings as reported to [the plan administrator and insurer] by the employee's employer."[96]

Unum argues that Surratt's employer did not collect premiums with the expectation that "perpetuity payments" fell under the definition of "monthly earnings." Unum stated in its final denial letter to Surratt that her employer had "paid premiums on the Gross Targeted Sales Incentive[]" and that her employer "did not pay premium[s] on any other source of income Ms. Surratt received."[97] Unum raised this ground for denial only in its last letter of denial. This last-minute addition to Unum's reasons for denial should not be considered in this analysis because Unum did not give Surratt the required "adequate notice" for its reasoning and the record is not clear as to how the premiums were calculated.[98]

---

[94] Rec. Doc. 19-1 at p. 20 (citing No. 11-0010, 2011 WL 4073165 (E.D. La. Sept. 13, 2011) (Africk, J.)). The "unanticipated costs" prong of the Court's inquiry was more comprehensively briefed in Unum's cross-motion for judgment as a matter of law, Rec. Doc. 19, and Surratt's opposition to Unum's motion, Rec. Doc. 25, and therefore the Court addresses those arguments here.

[95] See 2011 WL 4073165, at *7.

[96] *Id.*

[97] AR at p. 675.

[98] *See* 29 U.S.C. § 1133(1) (providing that all plans must "provide adequate notice in writing . . . setting forth the specific reasons for such denial"); *see also Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 393 (5th Cir. 2006) (finding noncompliance with section 1133 when plan administrator provided new justification for its denial); *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 974 (9th Cir. 2006) (citing *Robinson*) ("When an administrator tacks on a new reason for denying benefits in a final decision, thereby precluding the plan participant from

Unum also points to a document Surratt received from her employer, Humana.[99] That document advised employees of the "guidelines" of the long-term disability plan. In particular, Humana informed its employees that their long-term benefits would be "determined by his/her monthly base salary in effect on the day before his/her disability began."[100] It continues: "[f]or sales associates, monthly base salary equals base pay plus targeted sales incentive."[101] Despite Unum's contention, there is no reason to believe that "base pay" does not include Surratt's hourly wage and perpetuity payments, for the same reason that the perpetuity payments fall under the term "income." Unum would argue that "base pay" means only Surratt's hourly wage, but the record on that point is ambiguous, at best. Moreover, when compared to the clear language of the actual policy, Unum cannot establish that it should not have anticipated sales employees' perpetuity payments to be included in the term "monthly earnings." Accordingly, this factor also favors finding that Unum's interpretation was legally incorrect.

### 3.  *Ambiguity and* Contra Proferentem

As detailed above, the Court finds that the policy language was clear that "perpetuity payments" were part of a sales employees' "monthly earnings" for the purposes of benefits determination. However, even if the policy were ambiguous on this point, Unum's interpretation would fail because ambiguities must be construed against the drafter of the policy.[102] Unum argues that the Court should not apply the doctrine of *contra proferentem* because it is inconsistent with

---

responding to that rationale for denial at the administrative level, the administrator violates ERISA's procedures.").

[99] Rec. Doc. 33 at p. 8 (citing AR at p. 465); *see supra* note 87 and accompanying text.

[100] AR at p. 465.

[101] *Id.*

[102] *See High*, 459 F.3d at 578-79 (5th Cir. 2006).

20

the Supreme Court's decisions in *Firestone Tire and Rubber Company v. Bruch*[103] and *MetLife*.[104]

Those cases, however, do not restrict the applicability of the doctrine because neither considered the question of whether ambiguous terms should be construed against the drafter of the policy. The Supreme Court held in *Firestone* that challenges to a denial of ERISA benefits will be reviewed under a *de novo* standard unless the plan gives the administrator authority to determine eligibility for benefits or to construe the terms of the plan, in which case the abuse-of-discretion standard applies.[105] Likewise, that question was not at issue in *MetLife*, which held that an administrator's conflict of interest could not transform the standard of review but instead should only serve as a factor in the abuse-of-discretion analysis.

Meanwhile, the Fifth Circuit has long held that the doctrine of *contra proferentem* applies in ERISA cases when a policy term is ambiguous.[106] It has also expressly rejected the type of arguments that Unum now raises in cases after *Firestone*, a decision this Court is bound to follow.[107] Despite clear case law to the contrary, Unum argues that the Fifth Circuit has rejected the rule. In particular, Unum cites *Jimenez*,[108] *High v. E-Systems, Inc.*,[109] and *Smith v. Life Insurance Company*

---

[103] 489 U.S. 101 (1989).

[104] 554 U.S. 105 (2008).

[105] 489 U.S. at 115.

[106] *See, e.g.*, *Todd v. AIG Life Ins. Co.*, 47 F.3d 1448, 1451-52 (5th Cir. 1995) (holding that application of *contra proferentem* in ERISA cases "comports with this court's holdings . . . "); *Rhorer v. Raytheon Eng'rs & Constructors, Inc.*, 181 F.3d 634, 642 (5th Cir. 1999), abrogated on other grounds by *CIGNA Corp. v. Amara*, 131 S.Ct. 1866 (2011), ("We reject Raytheon's contention that we cannot apply the rule of *contra proferentem* in light of . . . *Firestone*.").

[107] *See Rhorer*, 181 F.3d at 642.

[108] 486 F. App'x 398 (5th Cir. 2012).

[109] 459 F.3d 573 (5th Cir. 2006).

*of North America*[110] for the proposition that the plan administrator vested with authority to interpret plan language has wide interpretive discretion to construe ambiguities in the plan.

As the Fifth Circuit set forth in *Wegner v. Standard Insurance Company*, the doctrine of *contra proferentem* applies when a court is interpreting whether the plan administrator's interpretation is legally correct.[111] The courts must employ this interpretative tool to determine the legal question of what the policy means in the first instance.[112] Unum's cited cases each align with this reading, because all of them rejected the application of the rule only at the abuse-of-discretion stage.[113] Here, consistent with Fifth Circuit precedent, the Court is applying the doctrine only at the first step to determine whether Unum's interpretation of the policy is legally correct.

Therefore, any ambiguous language must be construed in Surratt's favor when determining the correct legal interpretation of the policy's terms. Accordingly, even if the policy were ambiguous as to whether "perpetuity payments" are both included in the definition of "monthly earnings" and not expressly excluded, Unum's self-serving interpretation cannot be legally correct.

## C.    *Abuse of Discretion by Unum*

Even though the Court finds that Unum's interpretation was legally incorrect, it still may not upset Unum's determination unless Unum abused its discretion. This inquiry raises another three-part balancing test that considers the internal consistency of the plan under the administrator's

---

[110] 459 F. App'x 480 (5th Cir. 2012).

[111] 129 F.3d 814, 818 (5th Cir. 1997) (applying doctrine in *de novo* review of plan where administrator did not have authority to interpret policy provisions).

[112] *Rhorer*, 181 F.3d at 642 ("[T]his Court uses a unique two-step approach to apply the abuse of discretion standard, and *contra proferentem* may properly be used under the first step.").

[113] *See, e.g.*, *Smith*, 459 F. App'x at 484 (noting that *contra proferentem* is inapplicable "when reviewing an administrator's interpretation of plan terms for an abuse of discretion[]").

interpretation, any relevant regulations, the factual background of the determination and any inferences of lack of good faith.[114] Moreover, where the plan administrator is also the plan's insurer, as Unum is here, a court "must take that conflict into consideration[]" as well.[115] Finally, and most important here, "[i]f an administrator interprets an ERISA plan in a manner that directly contradicts the plain meaning of the plan language, the administrator has abused his discretion even if there is neither evidence of bad faith nor of a violation of any relevant administrative regulations."[116]

As discussed above, Unum interpreted the policy "in a manner that directly contradicts the plain meaning of the plan language[.]"[117] That interpretation is by itself enough to find that Unum abused its discretion. The Court finds, however, that additional evidence in the record supports this determination. In particular, the factors involving the factual background of this case and Unum's structural conflict of interest weigh in favor of finding that Unum abused its discretion in calculating Surratt's benefits.

Unum's alteration of the policy language in its denial letters to Surratt also suggests that Unum knew both what the policy clearly stated and what Unum wanted it to state. As is clear, the policy itself states that "monthly earnings" does not include ". . . shift differential, and any other extra compensation or income received from sources other than your employer."[118] When Unum explained its calculation methodology to Surratt in its denial letters, Unum deleted the "and" and

---

[114] *Id.*

[115] *Crowell*, 541 F.3d at 312 (citing *MetLife*, 554 U.S. at 112).

[116] *LifeCare Mgmt. Servs., LLC v. Ins. Mgmt. Adm'rs, Inc.*, 703 F.3d 835, 841-42 (5th Cir. 2013).

[117] *Id.*

[118] AR at p. 139.

added a comma before the "or."[119] Even if the alterations to the policy language Unum made in its denial letters do not provide any evidence of bad faith, the changes at least suggest that Unum was aware of what the plain language of the policy actually stated and had an understanding of the significance of its syntax and punctuation.

Additionally, as noted above, Unum "tack[ed] on a new reason for denying benefits in [its] final decision."[120] Such an action does not comply with the relevant statutory and regulatory requirements, because Unum's reference to the premiums that Humana paid to cover the policy as a reason for denying Surratt's claim "has never been reviewed at the administrative level."[121] "[ERISA] requires an administrator to provide review of the specific ground for an adverse benefits decision,"[122] and Surratt was denied the opportunity that the regulations require.[123]

Finally, the Court also must consider Unum's inherent conflict of interest. The importance of this factor will vary depending on whether "circumstances suggest a higher likelihood that [the conflict] affected the benefits decision[]" and less important where the administrator "has taken active steps to reduce potential bias and to promote accuracy."[124]

Surratt points to Unum's alleged history as a biased administrator, citing a Ninth Circuit case and a law review article in support of her assertion that the company has a "history of denying valid

---

[119] AR at pp. 348, 675.

[120] *Abatie*, 458 F.3d at 974.

[121] *See Robinson*, 443 F.3d at 393.

[122] *Id.* (citing 29 U.S.C. § 1133).

[123] *See* 20 C.F.R. § 2560.503-1(g)(1), (h)(2) (setting forth manner and content of notice of decision and claimant's right to appeal adverse determinations).

[124] *MetLife*, 554 U.S. at 117.

claims."[125] Unum asserts that there is nothing in the record to suggest that its conflict influenced how it calculated Surratt's benefits.[126] Moreover, Unum cites to several post-*MetLife* cases in which district courts have noted that since the implementation of new claims procedures by Unum, its history of claims practices by itself does not warrant extra consideration of Unum's conflict of interest in any given case.[127] In light of those cases and the copy of the regulatory settlement agreement Unum entered with almost all of the states and the U.S. Department of Labor,[128] and in light of the lack of evidence that the conflict influenced Unum's decision, the Court determines that Unum's conflict of interest here is "less important" that it might be in other cases.

Even so, Unum's conflict of interest cannot be completely overlooked, especially in light of Unum's self-serving, and incorrect, interpretation of the policy's plain language. In any event, "any one factor will act as a tiebreaker when the other factors are closely balanced, [with] the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance."[129] Whatever degree of weight Unum's conflict of interest should be accorded, the Court notes that the other factors lean significantly in favor of finding an abuse of discretion. Therefore, the Court needs no "tiebreaker" here. Accordingly, because Unum's interpretation of the policy directly contradicted its clear language, and because Unum did not comply with its regulatory requirements when it asserted a new reason for its determination in a final denial letter, Unum's determination of Surratt's

---

[125] Rec. Doc. 18-1 at p. 16 (citing *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 511 F.3d 1206 (9th Cir. 2008); John H. Langbein, *Trust Law as Regulatory Law: The UNUM/Provident Scandal and Judicial Review of Benefit Denials Under Erisa*, 101 Nw. U. L. Rev. 1315 (2007)).

[126] Rec. Doc. 27 at p. 11.

[127] *Id.* at 13 (citations omitted).

[128] AR at pp. 384-397.

[129] *MetLife*, 554 U.S. at 117.

long-term disability benefits constituted an abuse of discretion, and Surratt is entitled to a recalculation of her long-term disability benefits to include her perpetuity payments.

## V. Fees, Costs and Interest

Surratt also seeks attorney's fees, costs of suit, and prejudgment interest. Surratt briefly addressed these claims in her motion for judgment as a matter of law, but she has not provided or detailed any accounting of her attorney's fees and costs, nor does she state a final figure that she believes she is entitled to recover.[130] Unum's filings do not at all address the propriety of granting such relief. Accordingly, the Court will grant in part Surratt's motion for judgment as a matter of law and order that she receive increased disability benefits that include the "perpetuity payments" she received in 2010 as part of her "monthly earnings." However, as additional briefing would be necessary to determine whether Surratt is entitled to recover attorney's fees, costs, and prejudgment interest, and if so, how much she is entitled to recover,[131] the Court will deny the motion without prejudice on this issue and order both parties to file briefs addressing these remaining questions.

## VI. Conclusion

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Surratt's motion for judgment as a matter of law[132] is **GRANTED IN PART** and **DENIED IN PART**;

**IT IS FURTHER ORDERED** that Unum recalculate Surratt's long-term disability benefits to include the perpetuity payments she received in 2010, retroactive to the date of her eligibility;

---

[130] Rec. Doc. 18-1 at pp. 17-21.

[131] *See, e.g.*, *Schully v. Cont'l Cas. Co.*, 634 F.Supp. 2d 663, 687-88 (E.D. La. 2009) (Fallon, J.) (granting attorney's fees in ERISA claim, ordering additional filings regarding accounting of fees).

[132] Rec. Doc. 18.

**IT IS FURTHER ORDERED** that the Court will **DENY WITHOUT PREJUDICE** Surratt's request for attorney's fees, costs, and prejudgment interest to allow for additional briefing;

**IT IS FURTHER ORDERED** that Surratt file a memorandum no later than September 12, 2013, on the issues of whether she is entitled to recover attorney's fees, costs, and prejudgment interest, and if so, how much she is entitled to recover.

**IT IS FURTHER ORDERED** that Unum file any response to Surratt's memorandum no later than September 26, 2013.

**IT IS FURTHER ORDERED** that the matter will be set for submission on October 9, 2013, at 10 a.m.

**NEW ORLEANS, LOUISIANA**, this _29th_ day of August, 2013.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

27